All right, you must be Ms. Smith. I am. Good morning, Your Honors. We'll hear from you first. Barbara Smith on behalf of Appellant Maurice Walker, I would like to try and reserve about five minutes for rebuttal. As the district court itself acknowledged- You just have to watch your own time on that. We don't cut you off at five minutes, but you're welcome to say whatever you wish. And you're welcome to ask me as many questions as you'd like, obviously. As the district court itself acknowledged, this trial, which lasted less than a day, turned entirely on the credibility of three key party witnesses. If the jury believed Mr. Walker's version of events, that he alerted prison officials to his fears for his safety, then they were liable under 1983 for failing to protect him. If, on the other hand, the jury believed the two prison officials who testified inconsistently that the conversation either didn't happen or didn't happen in the way that Mr. Walker testified it did, then they might not be liable under 1983. And that's why this case turned entirely on credibility and why the district court's two evidentiary errors, which go to the heart of credibility, were so outcome determinative here. The first error that the district court made was its decision to preclude Mr. Walker from cross-examining a key government witness about that witness's propensity for untruthfulness in light of his decision to lie to prison officials investigating past prison misconduct. We submit that that's a clear violation of 608B and merits reversal. Well, 608B allows it subject to Rule 403, right? Yes, Your Honor. The error would have to be? It would have to be both an abuse of discretion and it would have to impact the outcome of the trial. That's the standard. When you say it was a violation of 608B, I just wonder... We're saying the same thing. You have to look at the 403 analysis and see whether the district court abused its discretion there. Yes, Your Honor. The 608B inquiry incorporates... What did you want to ask? You wanted to ask him, isn't it true that you had this recent inquiry about the photograph and you lied to the investigators? What exactly did you want to ask him? It's both a very recent instance of past misconduct, which Your Honor identified, the harassment of a prison inmate and the subsequent lying to prison officials about that investigation in order to avoid personal liability. And additionally, underlying conduct violations for failure to report use of force, all of which was included in the reprimand letter encompassed in that very recent, at the time, violation of a prisoner's rights. Does the district court record here really tell us what those are? I had trouble figuring out exactly, especially on the, this is your characterization, ball face lie in the course of investigation inmate mistreatment. Is that in the district court record somewhere? Is there an offer of proof? Or how do we know what it really was? So at JA, I believe it's about 113 to 114, there's a discussion between the trial council and the district court about precisely what it was the council wanted to ask on cross-examination. There was also submitted to the district court, I believe as a plaintiff's exhibit that was ultimately withdrawn, a copy of the reprimand letter itself that included the facts of the reprimand, the fact that the officer had lied in the course of the investigation and cataloged, as I mentioned, his prior history of failing to report use of force, which he's required to report. And obviously the failure to report is very similar to what we allege was the conduct here, the failure to report a conversation with an inmate regarding that inmate's fear for his safety. So you think when we actually get to the record, we can understand what it's really about? Yes, Your Honor, and frankly, I think your question is a good one and goes to why this evidence was so important. Because I think when you get into the facts of it and you're able to cross-examine the officer on the prior untruthfulness, his lack of credibility really is impinged and really does affect the jury's view of his propensity for truthfulness in testifying about his own misconduct. Are you saying that there's an offer of proof at page 113? There was not a formal offer of proof. There was a discussion of what it was that we sought to ask on cross-examination. There was a... Only representations by counsel, right? Yes. Okay, proceed. Yes, Your Honor. So the second evidentiary error that we submit the district court made was its decision in plain violation of Rule 412 to allow the government to introduce evidence of Mr. Walker's past sexual history. Rule 412 plainly disallows this type of... Now wait, you say plainly. Rule 412 applies to a proceeding that involves... It says at the top of the rule a proceeding involving alleged sexual misconduct. Yes. This is not a proceeding involving alleged sexual conduct. It's failure protects the cause of action and the rape is stipulated to. This is not alleged sexual misconduct. Help me, it seems plain to me. The rape itself is in fact sexual misconduct and it's a key fact of the case. But it's not alleged, counsel. Rule says alleged sexual misconduct. This is stipulated to. Well, frankly, Your Honor, if you think Rule 412 doesn't apply, there's also no reason to have admitted this evidence under Rule 403 because it's totally irrelevant to the case. Whether or not Mr. Walker... 401. I'm sorry? Rule 401. Yes, Your Honor. I mean, again, the central issue in the case here was whether or not a conversation between Mr. Walker and the prison officials occurred. And if in the course of that conversation, Mr. Walker expressed fears for his safety about potential sexual misconduct. And if he did that, then the prison officials are liable under 1983. But whether or not Mr. Walker himself previously engaged in sexual misconduct is totally irrelevant to that credibility determination. You didn't raise an issue about the applicability of 412 itself, did you? In your brief? Yes. Did we raise the question of whether 412 applies? Yeah, at all. You know, my argument says proceedings involving sexual misconduct. We assert that 412 does apply and that it was misapplied here. And before the district court, we asserted that the admission of this evidence would violate both Rule 412 and Rule 403. Okay, proceed. When you say 401, I mean, I said 401 because I thought you were just arguing it's irrelevant  assigned the perpetrator to the cell is irrelevant. It is totally irrelevant, Your Honor. I just thought that would be an objection under Rule 401 of irrelevance, not a Rule 403 balancing matter. Well, so I'm happy to... But you're saying it has some probative value is just outweighed by the prejudicial effect. I'm happy to have the court evaluated under the easier standard of 401. But we would argue even under the balancing standard of 403, it shouldn't have been admitted. There's absolutely no probative value in admitting Mr. Walker's past history of sexual misconduct because it's totally irrelevant, again, to the question whether the conversation at issue occurred, whether he alerted prison officials to his fears for safety. And if so, whether they're liable under 1983. And in fact, 412 includes a presumption that this type of evidence will be excluded precisely so that sexual innuendo, as this court has described it, doesn't enter into the fact-finding process. That's Wardlow. And allowing this testimony to come in, allowing a suggestion to come in that Mr. Walker himself had engaged in sexual misconduct does, in fact, infuse that sexual innuendo into the fact-finding process. So that's why we would submit it was a reversible error. The testimony shouldn't have been allowed. And by allowing it, the court enabled the jury to infer something about the credibility of Mr. Walker that affected the outcome of the trial. Is it significant that it appears the court would have allowed a more broad statement than the statement that was actually given? Eventually, the statement that's given is merely a statement of him intimidating, coercing them, and pressuring them. And there is, in fact, no reference to any sort of sexual contact at all. So JA-262 is the site that you referenced, the testimony that was given at trial. And if the court looks a mere five pages earlier, it can understand exactly what that testimony means because the witness himself explained to the judge and the parties outside the hearing of the jury exactly what he meant when he talked about sexual intimidation and coercion. But did the jury hear that? The jury did not hear it. The jury should not have heard that. It was intended to be outside the hearing of the jury. But frankly, Your Honor, in the context of this case, I think the meaning there was obvious. And that's not just my assertion that the meaning of that statement was obvious. It's the district court's assertion that the meaning of that statement was obvious, which appears at 258 when the district court judge says that she realizes in the context of a prison setting, quote, I realize it's all about sex, but in prison, it's all about intimidation or coercion as well. So even the district court acknowledges that references to intimidation and coercion in this context are in fact references to past sexual conduct. And those are inferences that the jury would reasonably draw? Absolutely, Your Honor. If the district court judge drew them, they're absolutely inferences that jury would have drawn and would have therefore affected the jury's view of the credibility of Mr. Walker and therefore affected the outcome of the trial. Why would it? I suppose the state will argue harmless error on this point. Why do you think it was so important to his credibility, this reference to him having previously intimidated or coerced other cellmates? Well, I think that in the decision to have something like Rule 412, we've made the decision that this kind of evidence shouldn't come in because of the risk that it will influence the jury. So the admission of this evidence, I think, is such a plain and clear abuse of discretion that it's impossible to know in a case like this that turns entirely on credibility. I don't think it's probably a structural error to let something in in violation of 412. It's got to be subject to harmless error analysis. Absolutely, Your Honor. But in a case like this where the only thing the jury is deciding is the credibility of the witnesses, it is harmful error to allow evidence or preclude evidence that affects the jury's view of the credibility of those witnesses. In other words, unlike other cases that evaluate 412 and that evaluate 608B, where there's other types of corroborating evidence that supports or refutes the testimony that's given, here the only thing the jury is hearing is the testimony of the parties to the case. And so any decision by the court that affects the credibility of those witnesses necessarily impacts the outcome of the case. With the court's permission, I'll reserve the remainder of my time. Okay, you may. Very well. Thank you for your argument. Ms. Blake, we'll hear from you. May it please the court. My name is Julie Blake. I represent the state. I'd like to take the first evidentiary issue, then go straight to Judge Colleton's question about how this is subject to Rule 403's prejudice test. And the prejudice in this case stems from the nature of what counsel represented as the nature of the evidence. And so I'd like to quote the offer in form of counsel representation You used the magic word offer. There's not an offer of proof in this case. That's what I'm saying. It's what he offered to the question. So on Joint Appendix 114. What page of the transcript is this? Five. Page five of the transcript. Okay, thank you. And we have Mr. Meyer saying what he intends to ask. He had said he wasn't going to use the exhibit itself as extrinsic evidence. So he talked about what he would ask. And so he described both the incident itself as well as the follow-up and investigation. And he in fact began with the incident itself. And I think when you start describing the incident, you start to see why the judge said, okay, this could be prejudicial. It's a bit far afield. And I don't think we want to go there. The quote, the incident itself involved printing a photograph of an offender and writing derogatory comments on it. And then the filing of the report and investigation that followed jumping down. It concluded he wasn't truthful in reports, interviews, during investigations, and fully cooperating and relating knowledge. That's all we have about the nature of what they would have asked on cost examination. Well, he might have targeted it better. But what about the fact that the witness was untruthful in the investigations? I mean, suppose, I know he tried to bring in all of these six policies that were violated. But what if he just said, we want to ask him, isn't it true that he lied to the DOC people when they investigated these matters? I think that would have cut out a number of the more clearly prejudicial things. You'd have gotten to the point where there was the core of the probative value of this evidence. But couldn't the judge have ruled in that way and said, I'm not going to let you bring in all six of these policies, but I'll let you ask about the truthfulness. Um, the judge could have said that, um, you know, the wide discretion in these areas to slice and dice. Now, the parties each took sort of an all or nothing approach in their responses. The judge doesn't really say very much about the balancing that she did under Rule 403. She actually simply states the conclusion, which sort of leaves, and she made reference to the government's argument, since we don't want to ignore that she did that. It's sort of like, for the reasons the government said, blah, blah. Right. But it's really not much of an analysis. And I'm a little concerned about that whole question about a prior incident where untruthfulness has been established and resulted in a reprimand, and it's not allowed to be presented. And it could have been easily severed from the rest of the sort of more harmful information or potentially prejudicial, I should say, information. And there doesn't seem to be any explanation as to why that was done. Does that, is that legally significant? Does it matter in the analysis? I hear what you're saying. There's probably a few different responses to that. First of all, this is going through a series of written motions in limine. So you also probably want to examine the written reasons offered on each of these points as well. And it was right before trial, the day of trial. So they probably were going, boom, boom, boom. You got this. OK, we need a quick decision on that. So that partially explains it. You know, this court's also said you're not required to make detailed written or oral findings on each of these points. And, you know, in trial, that's often the nature. A judge has to make a snap decision. But more broadly, I think your question is getting at the standard of review. We review for abuse of discretion on appeal. And, you know, frankly, if the judge said, hey, this is coming in, you know, that that might not have been an abuse of discretion, either if it was properly severed from the more prejudicial aspects we were just talking about, at least under the standard of review. And obviously the state objected to it. But looking at it with an appellate lens. I know, we understand that. But the question here is why wasn't an abuse of discretion not to let it in, in that narrower way, when credibility was an important issue in the case? I think that the judge thought that it wasn't closely connected to the nature of it. And to understand that, I think you need to look at in the trial itself what the testimony turned out to be what Officer White said. He said, I have no memory whatsoever. He didn't say it didn't happen. He didn't say it did happen. He said, look, I was there, wing officer, walking around a million times a day. I just don't remember this guy. I don't remember this conversation. It could have happened the way he said. But isn't truthfulness just an essential part of the cross-examination of every single witness? And, you know, if you flip this around, is there ever a world in which we would have looked at the claimant in this case who had been previously adjudicated as being a dishonest person, that once he takes the stand, we'd keep that out? I mean, does that really ever happen? You know, it's hard to say because a lot of times evidentiary rulings aren't given written opinions and decisions. It's difficult statistically to know. But how often do we have people that are actually adjudicated as having made an untruthful statement and it doesn't come in? I would presume it would be rare. I think in this case, the judge was looking at the fact that they wanted, that they probably might not be able to sever the information. And then because this court can affirm on any basis in the record, if you look at what the nature of what it said, which was not a flat denial, it was a lower probative value for it in light of the fact that said, look, this guy could be telling the truth. And then in retrospect, you do the balancing. You had the other officer then, who's the one who said what in her view really happened. Right. That was the only evidence from the officers as to what happened, right? Correct. White said he didn't remember. Correct. So you'd be impeaching a guy who says he doesn't remember. Right. Which is the implication would be, well, he's lying. He must really remember. And that's what they argued at closing. But where does that get you? I suppose is the question. If he's lying and say he doesn't remember, you still have to deal with the other witness who's the only one who gives a version of what happened. And that goes both to the weighing of the 403 test for prejudice as well to the broader harmless error question. Okay. You want to go on to the second problem? Yes. If I can take a few of the questions you asked, Miss Underwood. First of all, the threshold. Oh, my gosh. Sorry. It's all right. I don't know where that came from. We know each other in real life. So I really don't know where that came from. I apologize. I think I was trying just to make sure not to call her by her first name. My friend on the other side, speaking with Judge Benton about whether this is a case where there was alleged sexual misconduct and whether 412 actually applied. Did anybody brief that issue? You know, have you briefed it at all? I don't think it was really tacked on in briefing. But it wasn't raised in the district court either, right? To the contrary, it was. The district court actually said, quote, this is not directly 412. And that was part of the district court's decision, which is an appropriate basis to affirm were this court inclined to reach that issue. How is this evidence even relevant? Because the defense witness said he never told the two defendants why Nash, was it Nash? Is that his name? Was assigned to this cell. So I don't know. Can you explain why you thought the assignment, the reason for the assignment was relevant? Yes, and I think that we have to step back a little and realize there were two potential theories that might have been argued to the jury based on the evidence submitted in the plaintiff's case in chief. First was, I told him this guy was a bad dude and I felt threatened and you did nothing. That was claim one. But there was also evidence that had been elicited, especially from Officer Amons, and that she knew that Nash was an aggressive person, a bully, stealing food, pushing other inmates around. And it was possible that Mr. Walker would argue to the jury that, look, they knew there was a risk from this other fact, from the very mere placement of this guy in the cell, wholly apart from any personal threats. So it was on that second theory that this was more relevant and to show that that theory was not viable, this evidence was brought in to talk about matching why he was placed there, to show that it wasn't just the very fact of putting in the cell that we knew this was going to be a dangerous situation. We knew he was going to rape. We knew something bad was going to happen. And what this evidence showed was that there was an internal classification system with which people would be familiar where alphas were put with alphas, as opposed to deliberately putting a vulnerable person in with an aggressive person. They put Nash in there because they thought, you know, personality-wise, they'd be able to stand up to each other and not necessarily just result in a victim situation. But the defendants had nothing to do with that placement, as I understand. Which is why you had Baker, who did the assignment of the placement. But given that the officers worked in a situation where everyone in the prison was assigned under this adult internal classification system, they would have understand that that's why, that's how people are put there because of all these records and things that Baker was in charge of doing. Right, but these are people who walked to the wings multiple times a day and could, understood the broad reasons and patterns why people were placed there together. But the testimony wasn't just on the broad reasons. It was why this particular pair was put together. Right. Which is different than if you put the witness on the stand and say, here's how we classify people. And this is the general rubric that we follow. And we put alphas with alphas. And these are people that have a history of bullying or threatening or otherwise being difficult. And then if someone said, well, why were they put together? Someone might say, yeah, they're two alphas. But you don't get into, this particular witness has a history of these particular activities from which other inferences might be drawn. Right. Well, obviously in this case, both the general system was described as well as the specific. And it is important, and during my friend's argument, that it was not mentioned a specific sexual conduct, which is what takes it out of 412, even assuming 412 applied in the first place. And I think it's also important to realize that there was no actual evidence of connecting this to sexual conduct for a further reason that was not described below, but which would have been evident to the jury at trial. So Mr. Nash's history of intimidating behavior had been described. And it was given examples in terms of intimidation and coercion, but specifically non-sexual examples of how he could have intimidation and coercion in the prison context. Stealing food, stealing things from the canteen, just being a bully in general. So the jury could very well have said, oh, Mr. Walker is the same kind of bully. Intimidation and coercion might have meant that. It didn't necessarily mean sex. And the word sex was not admitted. And as you asked before, the jury could have been told under the district court's ruling about sexual intimidation and coercion because the district court allowed that. But in fact, the witness did not say that, which I think is key here in understanding that any sexual implications were inferences, unspoken inferences and not evidence. And the rules themselves speak to evidence, not to inferences. Well, inferences are evidence. Inferences from the evidence, I suppose. In any event, we do think that this would not have been an abusive discretion of the judge, given that it did go to an important defense, one of the main theories. This evidence was effective in the sense that it let the main credibility issue be the one that the parties focused on. And in any event, we think that the error would have been harmless, given the fact that it didn't include the direct sexual claims that the other side actually were properly able to make sure were not explicitly mentioned. All right. This court has no further questions. We ask that it affirm the judgment below. Very well. Thank you for your argument. We'll hear a rebuttal from Ms. Smith. I'd like to make at least two points on rebuttal. The first of which is the opportunity to address Judge Erickson's question about the district court judge's sort of cursory ruling on the 608B factors. If this court were to decide and to direct the judge to district courts, that they have to do a more thorough analysis in adjudicating cross-examination, the admission of cross-examination testimony under 608B, it would be in good company. That's precisely what the Second Circuit held in Cedeno. It's not enough for a district court to simply do a passing balancing. You have to consider specific factors. The Second Circuit chose to list those factors. This court could decide to adopt the same factors or not. But either way, it's procedural error, we argue, for the district court to have adjudicated this motion without balancing the proper factors But no Eighth Circuit precedent that way, counsel, right? I took it by your brief. Yes, Your Honor. But we would submit that district courts would benefit from guidance from this court. Absolutely. What about the fact that there was no real offer of proof? Doesn't that make it harder for the judge to... Your co-counsel could have made an offer of proof, which would have arguably made it easier to do a balance. What was she supposed to balance, do you think? There was, as my friend on the other side suggested, there was extensive briefing and motions in limine on these issues, on the facts that we would have used to support the cross-examination testimony here. And so the district court could have done the balancing and chose not to. And whether that was expediency or whether it was negligence, whether it was an abuse of discretion, we argue it was error and it's reversible because a more thorough balancing was required. The second point I'd like to be able to make on rebuttal is to address, again, Judge Benton, your question about whether 412 even applies. The text of 412 is that it prohibits the admission of this type of testimony in cases involving sexual misconduct. It doesn't say cases adjudicating whether sexual misconduct occurred. It says involving and alleged, but go ahead. So you address the terms of it. So we think by the plain text of 412, this involves sexual misconduct because the torted issue here for which the prison officials should have been liable was sexual misconduct. For the same reason... You keep leaving the word alleged out. We don't need to belabor this. But as you see, I'm hung up on the word alleged because there's no alleged sexual misconduct here. There's sexual misconduct. The rape was absolutely conceded, Your Honor, is correct. But the case still involved sexual misconduct. I suppose you might argue your complaint alleged that there was sexual misconduct and then the other side agreed with that. So it was stipulated. The government chose to stipulate to that in order to try and avoid the really difficult facts of the rape itself from coming into the case in greater detail. But in any event, it is unquestionable in my mind that this case involves sexual misconduct, as would any civil suit arising from a rape. And it would be improper to allow a jury to hear evidence of a victim of sexual assault, prior sexual history in that context as well. So by our lights, 412 plainly applies here. And it was a clear abuse of discretion to allow this testimony to come in. And further, even if Your Honor believes that 412 doesn't apply and is simply conducting a 403 analysis, this evidence is simply totally irrelevant. Why Mr. Walker and Mr. Nash were assigned to the same cell is not at all relevant to the question whether after that assignment occurred, Mr. Walker raised fears for his safety to the prison guards. They could have been cellmates for six years or they could have been cellmates for six minutes. But the point is, Mr. Walker testified that he had a conversation with prison guards in which he alleged his safety was threatened and the failure to protect him as a result of that was a violation of his constitutional rights. Well, she said there was a second theory that didn't depend on the transmittal of information to the correctional officers. Was that true? There was a second theory just that they knew generally about Nash's character and should have known based on that to remove Walker? Absolutely, Your Honor. And the failure to do so when Mr. Walker testified to his safety concerns, whether those were fears of being assaulted or fears of being sexually assaulted is irrelevant. A sexual assault occurred and he expressed safety concerns before that assault and therefore a 1983 violation occurred for which the guards were liable. Maybe my question wasn't clear. I thought she said the plaintiff had a second theory that was independent of whether he made any complaints to the officer. In other words, that the officers had some duty to protect Walker just arising from Nash's reputation as an aggressive person. It is Eighth Circuit precedent. I believe the case is young that if officers have constructed knowledge of the past aggressiveness of an inmate that that can qualify as the knowledge, the subjective knowledge required under 1983 in a deliberate offense. So was that an alternative theory in this case? That is an alternative theory. It was adjudicated at the qualified immunity stage on summary judgment when qualified immunity was denied. Okay, so she says that's why this evidence was relevant. To the denial of qualified immunity? No, I think she said, I thought what she said is the evidence of why Nash and Walker were put in the same cell was relevant in light of this theory that they had a duty arising from Nash's reputation for aggressiveness. I believe that's correct, Your Honor. I think everyone at the trial court understood that the reason for putting Mr. Baker on the stand was to explain why Walker and Nash were in fact put in the same cell. I don't think again that that is relevant to the central question of the case, which is just another reason the testimony should have been excluded. Why is that not relevant to the second theory, which is a theory that we know Nash is a bad guy who does bad things and you should never have put Mr. Walker with Nash and the answer would be we put bad guys who do bad things with bad guys who do bad things. Yes, Your Honor. Again, if it were the case that that's what the prison had done and Mr. Walker hadn't raised his concerns to prison officials, they might not be liable under 1983, but because he did so and in light of their knowledge, they were required when they learned of his fear to move him to a different cell. So you're essentially denying that there was actually a second theory of the case, that there was only one theory and that theory involved the dissemination of relevant information of risk and fear of harm by Walker to the authorities and that's the entire case and that the rest of it's a red herring. That goes to the subjective standard under 1983. Yes, Your Honor. Thank you. All right. Thank you for your argument. Appreciate the efforts of both counsel. The case is submitted and the court will file an opinion in due course.